600 So.2d 1035 (1992)
Y.A.M.
v.
M.R.M.
2900681.
Court of Civil Appeals of Alabama.
June 12, 1992.
*1036 Scott A. Rogers of Wolfe, Jones & Boswell, Huntsville, for appellant.
Ralph E. Slate of Slate, Cook & Waters, Decatur, for appellee.
PER CURIAM.
This is a child visitation case.
The father filed a complaint against the mother seeking a divorce and joint custody of the parties' three-year-old daughter. The mother filed an answer and counterclaim which alleged that the father had sexually abused the daughter. The mother also alleged that the father was being investigated by the Department of Human Resources (DHR) for acts of sexual abuse committed upon the daughter, and, therefore, he should not be awarded visitation rights.
After a pendente lite hearing regarding child support for the daughter, the trial court issued a temporary order providing, inter alia, that the father have pendente lite visitation with the child at the home of the paternal grandmother and under the supervision of the grandmother at all times.
When the case came on for trial, after an ore tenus proceeding, the trial court entered a final decree of divorce which awarded custody of the daughter to the mother and granted standard unsupervised visitation rights to the father. The mother filed a motion for new trial and later amended that motion to reflect newly discovered evidence of sexual misconduct between the father and the mother's son (the father's stepson), and between the father and the daughter. After additional testimony was presented, the trial court denied the motion. The mother appeals.
The mother contends on appeal that the trial court erred in granting the father standard unsupervised visitation in view of the evidence of sexual abuse, and she argues that any visitation with the father should be supervised. We agree.
While a trial court has broad discretion in determining visitation rights it will award a noncustodial parent, each such case requires an examination of the facts and circumstances of that individual situation. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987). Additionally, the trial court's primary consideration in establishing visitation rights for the noncustodial parent must be the best interests and welfare of the child. Brothers v. Vickers, 406 So.2d 955 (Ala.Civ.App.1981). In this regard, the trial court's judgment awarding visitation will not be reversed except for an abuse of the trial court's discretion. Jackson v. Jackson, 520 So.2d 530 (Ala.Civ.App. 1988).
At trial the mother testified that she became concerned that her daughter had been sexually abused when she observed the child in the bathroom rubbing vaseline on her bottom. The mother asked her what was wrong, and the child told her mother that her daddy had hurt her. The mother also testified that the child experienced nightmares after seeing her father; furthermore, the child told her mother that she did not want to see the father anymore because she was afraid of him. Further testimony from the mother revealed that, on the child's third birthday, after seeing the father, the child was upset and began telling the mother what the father had done to her. Subsequently, on the advice of the Madison County Police Department, the mother took her daughter to the Huntsville Hospital where she was referred to the Department of Human Resources.
*1037 The mother's witnesses at the initial hearing included Cindy Saseen, a social worker for the Madison County DHR; Julie Kastanakis, a therapist with the Child Advocacy Center (CAC); and Ethel Amacher, a clinical director at the CAC.
Ms. Saseen testified that she first became aware of the allegations of sexual abuse on June 14, 1990, when she was contacted by the Huntsville Hospital. Consequently, she interviewed the daughter and her half-brother, who was seven years old. Ms. Saseen testified that after the interviews were completed she had a definite opinion as to what happened to the children; however, the trial court sustained objections to her testifying as to her opinion because she had not been qualified as an expert. Ms. Saseen testified that based on that opinion she referred the case to the CAC.
At the CAC, the daughter was seen by Ms. Kastanakis, an expert in child adolescence and child sexual abuse. Therapy sessions began on July 25, 1990, and lasted until April 4, 1991. The mother introduced into evidence an assessment summary compiled by Ms. Kastanakis which stated that:
"During the individual therapy sessions [the daughter] has disclosed sexual abuse by her father involving touching her vaginal area with his penis. She was able to name body parts using the term `butt' for both her vagina and rectum and `mouse' for penis. [She] has consistently stated `Daddy's mouse on my butt' in reference to any bad touches. She has pointed to her own vaginal area when responding to where she was touched, along with using the anatomical dolls to point to vaginal area on the young female doll, who represented herself. [She] has inserted her own finger into the dolls vagina when asked where she was touched, and will point to the penis on the adult male doll stating `with that.' [She] has placed the penis of the adult male doll, whom she named `Daddy,' into her own mouth biting it when she was asked to show what happened, using the dolls due to her limited verbal abilities.
"Due to the disclosures made by [her] and the statements reliability as determined by my assessment, I have to recommend there be no visitation with her father who she names as her offender. The techniques used to evaluate [her] are those recommended in the guidelines for clinical interviewing and evaluation of child sexual abuse cases as recommended by APSAC (American Professional Society on the Abuse of Children)."
In addition, Ms. Kastanakis presented detailed testimony regarding the therapy and her observations of the child during the sessions. She testified that in her opinion the child had been sexually abused by the father.
Ms. Amacher testified that she had eight sessions with the child's half-brother, and she testified that he showed signs of sexual abuse. She testified that in her expert opinion the half-brother was sexually abused, and the abuser was the father.
At the hearing on the motion for new trial, the child's half-brother and Dr. van Eys, a specialist in child psychology, both testified. The half-brother testified that he had seen the father "hurt my sister ... [b]y touching her in private places," and that the father had touched him the same way.
Dr. van Eys testified that she has had several sessions with both children. She testified that in her expert opinion both children had been sexually abused by the father. Transcripts of some of these sessions were introduced into evidence and have been reviewed by this court.
As previously stated, the trial court's primary concern in establishing visitation rights for the noncustodial parent must be the best interests and welfare of the child. Brothers. In view of the evidence presented, we find that granting unsupervised visitation to the father at this time is not in the best interests and welfare of the daughter. Consequently, we hold that the trial court abused its discretion by awarding unsupervised and overnight visitation to the father, and that part of the trial court's judgment is due to be and is hereby reversed.
*1038 This cause is remanded for a judgment denying overnight visitation rights and ordering that any other visitation by the father with the daughter be strictly supervised.
REVERSED AND REMANDED WITH DIRECTIONS.
All the Judges concur.